IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
DANIELLE CORRIDEAN, individ-  )
ually and on behalf of all    )
similarly situated persons,   )
                              )
              Plaintiff,      )
                              )    No.  CV-06-524-HU
     v.                       )
                              )
RESTORE FINANCIAL SERVICES    )
NETWORK LLC, an Oregon corpor-)
ation; and SERGEANTS TOWING,  )    FINDINGS & RECOMMENDATION
INC., an Oregon corporation,  )
                              )
              Defendants.     )
_____)
```

Jon M. Egan
JON M. EGAN, PC
240 Sixth Street
Lake Oswego, Oregon 97034-2931

    Attorney for Plaintiff

Jeffrey I. Hasson
DAVENPORT & HASSON, LLP
12707 NE Halsey Street
Portland Oregon 97230

    Attorney for Restore Financial Services

/ / /

/ / /

/ / /

1 - FINDINGS & RECOMMENDATION

1  Sean Donahue
   DONAHUE & ASSOCIATES
2  1625 Umpqua Bank Plaza
   One SW Columbia Street
3  Portland, Oregon 97258-2021

4      Attorney for Sergeants Towing, Inc.

5  HUBEL, Magistrate Judge:

6      Plaintiff Danielle Corridean brings this Fair Debt Collection
7  Practices Act (FDCPA) action individually, and on behalf of all
8  similarly situated persons. Plaintiff brings claims under the
9  FDCPA, the Oregon Unfair Debt Collection Practices Act (OUDCPA),
10 and the Oregon Unfair Trade Practices Act (UTPA). Federal
11 jurisdiction is based on the presence of a federal claim under the
12 FDCPA. See Compl. at ¶ 2 (alleging federal jurisdiction based on
13 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d)).

14     Defendants move for summary judgment arguing that the "debt"
15 defendants were attempting to collect, is not recognized as a
16 "debt" under the FDCPA and thus, plaintiff cannot sustain a FDCPA
17 claim and thus, there is no federal court jurisdiction.
18 Additionally, defendant Sergeants Towing, Inc. argues that it is
19 not a "debt collector" as defined in the FDCPA and thus, plaintiff
20 cannot sustain an FDCPA claim against it for that additional
21 reason. Sergeants also contends that the FDCPA claim against it is
22 time barred.

23     Plaintiff moves to strike portions of declarations filed by
24 defendants in support of their motions. I recommend that
25 defendants' motions be granted. I recommend that plaintiff's
26 motions to strike be denied as moot.

27                                BACKGROUND

28     The Complaint alleges that it is brought on behalf of three

2 - FINDINGS & RECOMMENDATION

distinct classes, the composition of which is not relevant to the issues raised in the motions.[1] Plaintiff contends that the FDCPA violations include, but are not limited to, the use of false representations or deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. §§ 1692e, e(2), e(5), and e(10), and the use of unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f and f(1). Additionally, one of the classes alleges a failure to properly identify the person to whom the alleged debt is owed in violation of 15 U.S.C. § 1692g(2). The specifics of the state claims are not relevant to the resolution of the instant motions.

Restore Financial Services Network admits that it is a collection agency. Restore asserts that on June 1, 2002, Sergeants impounded plaintiff's car at the request of a third party in accordance with O.R.S. 98.812(1). Plaintiff agrees that Sergeants towed the car, but asserts that it was on July 1, 2002.[2]

---

[1] A motion for certification of a class under Federal Rule of Civil Procedure 23, has not yet been filed in the case.

[2] Although the discrepancy in the date does not matter for the purposes of these motions, I note that Exhibit 2 to the Declaration of Jon Egan, the document plaintiff cites in support of her position that the vehicle was towed on July 1, 2002, and not June 1, 2002, does not support her assertion. I have reviewed all five pages of that exhibit and there is no reference to the vehicle being towed on July 1, 2002. Page 1 of the exhibit is a January 18, 2006 "priority notice" to plaintiff from Restore informing plaintiff of a deficiency owed to Sergeants for towing and storage and further informing her that her account had been assigned to Restore for collection. Exh. 2 to Egan Declr. at p. 1. There is no reference to a towing date. Page 2 is a notice to plaintiff from Restore entitled "Verification of Debt" which refers to Sergeants as being the original creditor and gives information about the principal amount due, the interest, and the past due total. Id. at p. 2. There is no mention of the

3 - FINDINGS & RECOMMENDATION

1    Plaintiff disputes that the car was towed in accordance with
2 O.R.S. 98.812(1). Although Restore asserts that the car was
3 improperly parked without authorization at a third party's home in
4 Portland, plaintiff argues that it was properly parked at her
5 friend's home, the car was donated to charity, and that plaintiff's
6 friend did not call Sergeant's to tow it, but rather called a
7 charity to donate it.

8    What appears to be undisputed is that the car was parked at
9 the home of Melaney Pettini, plaintiff's friend. What also appears
10 to be undisputed is that Pettini called someone about the car. She
11 denies she called Sergeant's, Pettini Declr. at ¶ 6, but two
12 exhibits submitted by plaintiff in support of her motion to strike
13 the declaration of Steve Preston, show that the car tow was
14 requested by "Melanie" or "Pettini" because it was
15 "PPI/Unauthorized" and the date was June 1, 2002. Exhs. 1 and 2 to
16 Egan Declr. in Support of Motion to Strike Preston Declr.  In her
17 declaration, Pettini says that in June 2002, the car belonged to
18 plaintiff and a Marcus Tenaglia and was properly parked at

---

tow date.  Page 3 of the exhibit is a June 7, 2002 copy of the
title of plaintiff's car sent to Sergeants Towing from the Oregon
DMV.  If anything, this document tends to show that the tow date
was June 1, 2002, because there would be no other reason for DMV
to send a copy of the title to Sergeants on June 7, 2002.  Page 4
of the exhibit is a document entitled "Claim of Possessory Lien"
issued by Sergeants Lien Service showing Sergeants Towing as the
lien claimant and plaintiff as the lien debtor.  Id. at p. 4.  It
does not have a tow date, but it does state that claimant
(meaning Sergeants), obtained "said chattel," meaning plaintiff's
car, on June 1, 2002.  Id.  It also lists the date of July 1,
2002, under "Auction Information."  Id.  Finally, page 5 of the
exhibit appears to be the second page of the "Claim of Possessory
Lien" document.  Thus, the exhibit does not support plaintiff's
assertion that the tow occurred on July 1, 2002.

4 - FINDINGS & RECOMMENDATION

Pettini's residence at 5209 NE 35th Ave in Portland. Pettini Declr. at ¶ 3. She states that at the request of plaintiff and Tenaglia, she called a local charity to donate the car. *Id.* at ¶ 4. She does not remember which charity she called. *Id.* at ¶ 5. For the purposes of summary judgment, I am obligated to view the facts in the light most favorable to plaintiff. Accordingly, I accept Pettini's representation that she called a charity and not Sergeants.

Thus, for the purposes of these motions, I accept that Pettini called an unidentified charity to donate the car which was parked at her house, and that Sergeants came and towed it away. It is also undisputed that plaintiff was the registered owner of the car at the time and did not transfer title of the car after the alleged donation.

Restore states that on June 14, 2002, after learning from DMV that the car was registered to plaintiff in Oregon, Sergeants mailed plaintiff the required notice of lien pursuant to O.R.S. 98.812(2). Plaintiff states she never received any such notice. She also asserts that the notice was deficient and that it was not as required by O.R.S. 98.812(2).

Restore states that after Sergeants properly foreclosed on its lien on the car pursuant to Oregon law, it assigned the collection of its deficiency claim against plaintiff to Restore. Plaintiff agrees that Sergeants assigned the collection of whatever obligation or alleged obligation arose out of the towing and storage of the car to Restore. Plaintiff denies that Sergeants had a deficiency claim.

/ / /

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to

6 - FINDINGS & RECOMMENDATION

the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

## DISCUSSION

I. Defendants' Ability to Raise a Subject Matter Jurisdiction Argument

Before addressing the merits of defendants' arguments in support of their motions, plaintiff argues that defendants are precluded from raising a subject matter jurisdiction issue because they both admitted in their respective Answers that the Court has federal question jurisdiction over the FDCPA claims. I reject this argument based on Federal Rule of Civil Procedure 12(h)(3), which provides that the issue of subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage of the litigation.

Alternatively, plaintiff contends that defendants' motions are not true attacks on subject matter jurisdiction but are instead challenges to the merits of the FDCPA claims. Plaintiff contends that if a court concludes that it lacks subject matter jurisdiction, it must dismiss the action in its entirety, but if it grants a motion for failure to state a federal claim, the court retains discretion to exercise supplemental jurisdiction over any supplemental state law claims.

In Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802 (9th Cir. 2001), the Ninth Circuit explained that where there is no

7 - FINDINGS & RECOMMENDATION

underlying original federal subject matter jurisdiction, the court has no authority to adjudicate supplemental claims under 28 U.S.C. § 1367. Id. at 805. In contrast, when a district court dismisses a federal claim over which it had original jurisdiction, the court may then decline to exercise supplemental jurisdiction over the remaining state claims. Id. at 806.

In this case, I conclude that upon granting defendants' motions, dismissal of the entire Complaint is appropriate, even if the motions are considered a challenge to the merits of the FDCPA claim as opposed to a challenge to subject matter jurisdiction. As explained below, if the motions are directed to the merits of the federal claim, I recommend that the Court decline to exercise supplemental jurisdiction over the state claims, and thus, I recommend dismissal of the entire action.

II. FDCPA Claim - Debt

Both defendants argue that the transaction at issue is not a "debt" within the meaning of the FDCPA. The statute provides that "debt collectors" who fail to comply with any provision of the law are liable for certain damages. 15 U.S.C. § 1692k(a). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another[.]" 15 U.S.C. § 1692a(6).

A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which the money, property, insurance, or services which are the subject of the

8 - FINDINGS & RECOMMENDATION

transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Both defendants rely on a 2003 Western District of Washington case, Betts v. Equifax Credit Info. Servs., 245 F. Supp. 2d 1130 (W.D. Wa. 2003), to argue that a towing obligation imposed by virtue of a state statute is not a "debt" for purposes of the FDCPA. There, a vehicle seller's report was filed with the State of Washington, evidencing the sale of a 1982 Cadillac. The sale allegedly occurred on February 20, 1983, and the seller's report was filed with the state on March 3, 1993. Id. at 1132. The listed seller was Fred Jackson and the listed purchaser was June Baker, the plaintiff (actually, her former name). Id. The report listed the plaintiff's then current address. Id.

In 1998, the car was reported abandoned. A law enforcement agency authorized the car's tow and impoundment by Royal Towing, which later sold the car at public auction. Id. The auction did not cover the costs incurred, which by statute created a deficiency claim. The towing company assigned the deficiency to Topco Financial Services, Inc. Id.

In December 2000, the plaintiff and her husband attempted to obtain a mortgage. A credit report revealed that Topco was reporting an unpaid debt of $488, stemming from the remaining towing and storage fees arising from the car's impoundment, to Equifax. Id. The plaintiff contacted Topco. She denied ever owning the car or having contact with the listed seller. Topco filed suit against her, seeking to recover the debt owed to Royal Towing. The court entered judgment in favor of the plaintiff,

9 - FINDINGS & RECOMMENDATION

holding her not liable for the services rendered by the towing company. Id.

In the FDCPA federal court case brought by the plaintiff, the defendants moved for summary judgment on the issue of whether there was a "debt" within the meaning of the FDCPA. Id. The court noted that the relevant debt was the deficiency claim held by Royal Towing, to recoup towing and storage expenses. Id. at 1133. The court stated that "[b]y virtue of her former name and address being listed on the vehicle seller's report, debt collection efforts were directed at Ms. Betts." Id.

Thus, the court reasoned, the question became whether this debt arose from a "transaction," as the statute contemplates. Id. The court explained that the pertinent factual occurrence to consider was the one that gave rise to the deficiency claim. Id. The court stated:

> Although Ms. Betts would not have acquired the purported debt but-for the fraudulently filed vehicle seller's report, that debt specifically arose from the impoundment and storage of the Cadillac, not the alleged transfer of ownership to Ms. Betts. Accordingly, the Court must focus on whether the impoundment and storage, authorized by state statute, constitutes a transaction.

Id.

The court noted that no Ninth Circuit case had directly addressed the issue but, it stated, the Ninth Circuit had previously relied on and adopted the reasoning of the Seventh Circuit in a case discussing the meaning of the word "transaction." Id. (citing Charles v. Lundgren & Assocs, P.C., 119 F.3d 739, 740-42 (9th Cir. 1997) (citing Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997)).

According to the Betts court, "the Seventh Circuit sought to

10 - FINDINGS & RECOMMENDATION

preserve broad congressional intent and concluded by defining 'transaction' as a 'broad reference to many different types of business dealings between parties.'" Id. (quoting Bass, 111 F.3d at 1325). The Betts court further noted that the Bass court rejected the Third Circuit's narrow interpretation, but, the Betts court explained, the Bass court did conclude that "'the FDCPA limits its reach to those obligations to pay arising from consensual transactions where parties negotiate or contract for consumer related goods or services.'" Id. (quoting Bass, 111 F.3d at 1326).

The Betts court then stated that the issue before it was "whether any contractual, business, or otherwise consensual arrangement for services rendered can be found between Ms. Betts, who steps into the shoes of the actual owner of the Cadillac, and Royal Towing." Id. The court concluded that it could not. Impoundment under the relevant state statute was not a consensual consumer transaction, but rather, was a consequence of leaving one's vehicle in an unauthorized location subject to impoundment. Id. The court explained that liability automatically attaches. Id.

The court concluded that

> [t]he impoundment of one's vehicle and statutory liability that necessarily attaches are not akin to even a broad interpretation of a contractual, business, or otherwise consensual arrangement for services rendered. There is simply no "transaction" between the parties. Law enforcement personnel and state statute, not the Cadillac owner, authorized the towing and impoundment of the vehicle.

Id.

Betts was also recently cited by the District of Minnesota in

11 - FINDINGS & RECOMMENDATION

a case where the plaintiff brought an FDCPA claim against a collection agency which was attempting to collect unpaid parking fines. The court in Graham v. ACS State & Local Solutions, Inc., No. Civ. No. 06-2708 (JNE/JJG), 2006 WL 2911780 (D. Minn. Oct. 10, 2006), stated that the "plain language of the [FDCPA] statute indicates that the FDCPA may be triggered only when an obligation arises out of a consumer transaction." Id. at *1. "At a minimum, the transaction must involve either a business dealing or other consensual consumer obligation." Id.

The court concluded that the debt was not a "debt" for purposes of the FDCPA because it arose out of unpaid parking tickets. Id. The court explained that the plaintiff asserted no law or facts to establish that the receipt of a fine for a parking violation is a consensual consumer transaction. Id. It failed to see how the receipt of a parking ticket, which "is a legally imposed fine for parking one's vehicle in an unauthorized location, can constitute a consumer transaction." Id. at *2.

Defendants here rely on Betts and Graham to argue that the original debt owed to Sergeants by plaintiff for the tow and storage was not a consumer transaction and did not arise out of a business dealing. Thus, it is not a debt under the FDCPA and they are entitled to summary judgment on the FDCPA claim.

I agree with defendants. Even assuming that Pettini acted as plaintiff's agent, plaintiff's asserted facts show that there was no transaction between Pettini and Sergeants. According to plaintiff, Pettini called a charity and Sergeants showed up to tow the car. The only reasonable conclusion based on plaintiff's facts is that the charity called Sergeants to have the car towed and

12 - FINDINGS & RECOMMENDATION

stored by Sergeants. Because either the charity, or some unidentified entity, called Sergeants, and the charity is not a consumer and nothing establishes the potential unidentified person/entity as a consumer or as acting as plaintiff's agent, no consensual tow arrangement can be attributed to plaintiff on these facts.

Thus, a third party, meaning the charity or an unidentified third party, called Sergeants and there is a complete absence of any facts to support the assertion that plaintiff and Sergeants had a transaction for consumer related goods or services. Under Betts and Bass, the monetary obligation created by the tow is not an obligation to pay arising from a consensual transaction where the parties negotiated or contracted for consumer related or personal goods or services. Rather, the obligation is created by plaintiff's title ownership of the vehicle towed and stored by Sergeants at the request of the charity or an unidentified third party. Thus, even on the facts plaintiff asserts, I recommend concluding that this is not a "debt" as the relevant cases have interpreted that term under the FDCPA.

At oral argument, plaintiff suggested that her original purchase of the car was a consumer transaction and that it is this original purchase of the asset itself that is the basis of the "debt" analysis. I reject this argument as a nonsensical construct of the statute. The debt at issue in this case is for the tow and storage of the car by Sergeants which was, under the facts asserted by plaintiff, requested by the charity. Plaintiff's original purchase of the car simply has nothing to do with the debt at issue.

13 - FINDINGS & RECOMMENDATION

I recommend that defendants' motions for summary judgment be granted because there is no "debt" as defined in the FDCPA. Because I agree with defendants on this primary argument, I do not further address Sergeants's additional independent arguments that it is not a debt collector and that plaintiff's FDCPA claim is barred by the statute of limitations.

III. Motions to Strike

Plaintiff moves to strike parts of the declaration submitted by Sergeants President Steve Preston and parts of the declaration submitted by Jim Reed, Restore's custodian of books and records. Because I did not rely on any of the challenged statements in either of these declarations in resolving the summary judgment motions, I deny plaintiff's motions to strike as moot.

IV. Supplemental Jurisdiction

Construing defendants' motions as directed to the merits of the FDCPA claims for failure to concern a debt within the meaning of the FDCPA, rather than motions directed to a lack of subject matter jurisdiction, I recommend that the Court decline to exercise its discretion to retain the remaining state claims.

Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over any claim if the court has dismissed all claims over which it has original jurisdiction. Such is the case here. Typically, when all federal claims are eliminated before trial, the court should remand the case unless retention is justified by judicial economy, convenience, fairness to the litigants, and comity. Acri v. Varian Ass'n., Inc ., 114 F.3d 999, 1001, supplemented, 121 F.3d 714 (9th Cir. 1997). Here, because discovery in the litigation has been limited to the issues

14 - FINDINGS & RECOMMENDATION

surrounding the FDCPA definition of "debt," it is relatively early in the case and other than the limited issue raised by the instant motions, this Court has not devoted substantial time or resources to this case. Any discovery already taken can be used in the state court proceeding. There is no reason to believe that a remand would cause unreasonable delay, unnecessary expense, prejudice, or inconvenience. Furthermore, comity weighs in favor of a remand. With the demise of the FDCPA claim, plaintiff now has only state law claims that should be decided in the first instance by an Oregon state court.

## CONCLUSION

Defendants' motions for summary judgment (#40, 44), should be granted and plaintiff's motions to strike (#55, 58) should be denied as moot. The Court should decline to exercise supplemental jurisdiction over the state law claims and the entire action should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 6, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

15 - FINDINGS & RECOMMENDATION

If objections are filed, a response to the objections is due February 20, 2007, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this  22nd  day of January     , 2007.

/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

16 - FINDINGS & RECOMMENDATION